Mary Elizabeth BRYANT, Appellant,

v.

Debora Bryant FLINT and George Bryant, as Co–Independent Executors, Appellees.

No. 01–94–00515–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 8, 1994.

Rehearing Denied Jan. 5, 1995.

Brad Beers, Houston, for appellant.

Michael J. Zomcik, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This case involves the interpretation of an agreed judgment from a probate court. We affirm.

## Fact Summary

At issue in this case is an agreed judgment entered into between Mary E. Bryant, the wife of Darwin R. Bryant, and Debora Flint and George Bryant, the children of Mr. Bryant by earlier wives (collectively, the Bryant children). Darwin Bryant died in 1985, leaving a $1.2 million estate. Before his death, Darwin Bryant had separated from Mary Bryant a few times, and a divorce petition had been filed. In his will, Darwin Bryant left his entire estate to his children, and did not leave Mary Bryant, his wife of five years, anything. Flint, one of Darwin Bryant's daughters from a previous marriage, was co-executor of the estate.

After Darwin Bryant's death, Mary Bryant filed a declaratory judgment suit seeking her share of the community estate, reimbursement for bills she paid on his separate property, and a family allowance. On June 17, 1987, Mary Bryant agreed to compromise her claims and signed an agreed judgment. By the terms of the agreement, Mary Bryant gave up all claims against Darwin Bryant's separate property and his share of the community property in return for the household furnishings in their townhouse and the deed to their $180,000 condominium. Mary Bryant also agreed to pay to the estate one-half of any federal income tax liability for the period during their marriage (1980–1985), provided that the tax liability was not to exceed $75,000. At the time of Darwin Bryant's death, the Internal Revenue Service was auditing the couple's joint tax returns for the years of 1982, 1983 and 1984. The IRS later assessed $167,340 in delinquent back taxes.

Two years after signing the agreement, Mary Bryant applied to the IRS for an "innocent spouse" determination concerning some of her husband's tax shelter investments. On October 29, 1991, the IRS wrote Bryant a letter, stating

You have been relieved of all liabilities for the above mentioned years [1982–1984]. We are making the necessary adjustments to remove your name from the joint account. This is your notice that you are not

liable for any tax deficiencies as a result of these years.[1]

At the time the IRS sent Mary Bryant the "innocent spouse" determination, the estate had already paid $96,000 of the $167,340 amount assessed as taxes. On December 20, 1991, one month after the IRS determination, the estate made the last payment of $71,340 due to the IRS. When Mary Bryant refused to pay the $75,000 as she had agreed, the estate filed this declaratory judgment action to recover that amount from her.

### Interpretation of the Agreement

In her sole point of error, Mary Bryant contends the trial court erred as a matter of law in holding that even though she was "an innocent spouse" she was liable for one-half of Darwin R. Bryant's individual federal tax liability by ruling that the phrase "tax liability of petitioner *and* decedent" really meant "tax liability of petitioner *and/or* decedent" in an agreed judgment. In their reply point, the Bryant children contend the probate court correctly interpreted Darwin Bryant's obligations under the agreed judgment.

The agreed judgment reads:

It is further ORDERED, ADJUDGED AND DECREED that **Petitioner shall be liable to the Estate for one-half of any Federal income tax liability (including taxes, penalties and interest) of Petitioner and Decedent for any period during their marriage** which began on January 15, 1980, and terminated on the date of Decedents death on December 12, 1985. In no event shall Petitioner's portion of the tax liability (including taxes, penalties and interest) for such period exceed the sum of SEVENTY FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS. The Co–Executors of the Estate shall assume the responsibility for the active and reasonable defense of any assessment of tax liability (including taxes, penalties and interest) for the period of the parties' marriage and shall pay in full any such tax liability (including taxes, penalties and interest). The

contingent liability of Petitioner to the Estate shall be evidenced by a promissory note and lien in favor of Decedent's Estate secured by the "Destin Condominium." The promissory note shall provide that the liability of Petitioner shall be due and payable upon sixty (60) days written notice to her of the payment by the Estate of any income tax liability (including taxes, penalties and interest) arising out of the period of the parties' marriage. Interest at the rate of ten percent (10%) per annum shall accrue on any unpaid liability commencing thirty-one (31) days after such written notice until such liability is fully discharged by payment. The balance of any income tax liability (including taxes, penalties and interest) of Petitioner and Decedent arising out of the period of the parties' marriage shall be the sole liability of the Decedent's Estate.

(Emphasis added).

 The issue in this case is whether the italicized words mean that Mary Bryant is liable for the joint taxes due the IRS even though she received an innocent spouse exemption. A spouse may obtain a limited release from joint liability for tax, including interest, penalties, and other amounts, as an "innocent spouse," provided the spouse can prove by a preponderance of the evidence that (1) a joint return was filed in which there is an omission from gross income attributable to the guilty spouse of more than 25 percent of the total gross income stated on the return; (2) he or she did not know of, and had no reason to know of, the income omissions; and (3) it is inequitable to hold him or her liable for the deficiency, taking into account whether he or she significantly benefitted from the income omissions and all other facts and circumstances. SALTZMAN, *IRS PRACTICE AND PROCEDURE, Penalties* § 7.08[4]n (1981).

An expert for the estate testified that the determination that a person is an innocent spouse does not negate the obligation to pay taxes by the joint community estate. He

---

1. When Mary Bryant's counsel offered the IRS determination as an exhibit, the estate stated it did not object to the authenticity of the exhibit, but did object because it tended to negate her

obligation under the settlement agreement. The court ruled the objection went to the weight, and overruled it.

testified that the IRS will not require a person with an innocent spouse classification to pay the taxes from that person's separate property, but the community property would be liable. He testified the IRS could have taken the property Mary Bryant received in the settlement (the condominium) to pay the taxes due. He also testified that the determination that Mary Bryant was an innocent spouse was just between the IRS and Bryant, and the estate was not a party to it and was not bound by it. In addition, Mary Bryant obtained an innocent spouse determination for three of the five years she was married to Darwin Bryant, for 1982 through 1984. For the two years not covered by the IRS determination, 1981 and 1985, if the estate had not paid the taxes, Bryant would have been responsible to the IRS for them.

■ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *GT & MC, Inc. v. Texas City Refining, Inc.,* 822 S.W.2d 252, 255 (Tex.App.—Houston [1st Dist.] 1991, writ denied). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393; *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 739 (Tex. App.—Houston [1st Dist.] 1992, writ denied). No single provision, taken alone, will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Coker,* 650 S.W.2d at 393. If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.; GT & MC, Inc.,* 822 S.W.2d at 255–56. But if the meaning of a contract is doubtful or uncertain or it is reasonably susceptible to more than one meaning, the contract is ambiguous. *Coker,* 650 S.W.2d at 393; *Polland & Cook,* 832 S.W.2d at 739. Whether a contract is ambiguous is a question of law for the court to decide. *Coker,* 650 S.W.2d at 394.

■ In its judgment, the lower court held Mary Bryant was responsible to pay the $75,000 set out in the agreed judgment. The trial court did not file findings of fact and conclusions of law. Without findings of fact or conclusions of law, an appellate court presumes the trial court made all necessary findings to support the judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *In re Estate of Johnson,* 781 S.W.2d 390, 391–92 (Tex.App.—Houston [1st Dist.] 1989, writ denied). If there is evidence to support the implied finding of fact, the appellate court must uphold the judgment on any theory of law applicable to the case. *Johnson,* 781 S.W.2d at 392.

Here, the parties argued whether the word "and" in the agreed judgment can be interpreted to mean "and/or." We find it unnecessary to engage in this analysis. Rather, we examine the record to determine if the evidence supports the judgment.

■ We find there is evidence to support the trial court's judgment. The Bryants filed a joint tax return. At the time Mary Bryant signed the agreed judgment, she was aware that the IRS was auditing the joint return and that she might be liable for as much as $190,000 in back taxes. As part of her divorce proceeding, Mary Bryant filed an inventory with the court and signed it. In the inventory, Mary Bryant listed the security investments that were being audited by the IRS and form the basis of this suit as community property.

Mary Bryant admits in her brief that in 1987, when she signed the settlement agreement, she knew about the potential tax liability and that she might be responsible for paying part of it. Mary Bryant argues that in 1991, when she learned that this assumption was wrong because the IRS would not hold her responsible, she no longer owed the estate for the agreed amount of $75,000. Mary Bryant overlooks the fact that she compromised her claims by signing the settlement agreement and by contract agreed to be responsible for part of the tax liability. Although the IRS "innocent spouse" exemption may have extinguished her liability to the IRS, it did not diminish her liability to the estate under the settlement agreement.

We hold Mary Bryant is liable by contract to the estate for $75,000. We overrule Mary Bryant's sole point of error.