Karon O. MATTHEWS and
Donna R. McCarble

v.

**HIGH ISLAND INDEPENDENT SCHOOL DISTRICT and John Chiaravalloti.**

Civil Action No. G–97–364.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 22, 1998.

Joseph Y. Ahmad, Ahmad & Zavitsanos, Houston, TX, for Plaintiffs.

Bridget R. Robinson, Walsh Anderson Underwood Schulze & Aldridge PC, Austin, TX, for Defendants.

## ORDER

KENT, District Judge.

Plaintiffs Karon Matthews and Donna McCarble bring this action against their former employer High Island Independent School District ("High Island ISD") and John Chiaravalloti, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the First Amendment, and the Texas Commission on Human Rights Act ("TCHRA"), TEX.LAB.CODE § 21.001 *et seq.* Now before the Court is the Defendants' Motion to Dismiss under FED. R.CIV.P. 12(b)(6) for failure to state a claim, filed November 5, 1997. For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## I. FACTUAL BACKGROUND

Matthews and McCarble were employed by Defendant High Island ISD as elementary school teachers. They allege that the principal of their elementary school, Defendant Chiaravalloti, made crude sexual innuendoes about them to other people, in front of students and teachers, and generally "consistently made obscene, profane, and offensive comments to students and teachers at High Island ISD." Plaintiffs filed grievances, on behalf of themselves and other female teachers, with High Island ISD on January 24, 1996. Subsequent to their filing grievances, Chiaravalloti allegedly began a "campaign of harassment" against them. On April 1, 1996, the High Island ISD Board of Trustees notified Matthews and McCarble that their teaching contracts were not being renewed, and Plaintiffs were effectively terminated.

## II. ANALYSIS

When considering a Motion to Dismiss for failure to state a claim under FED.R.CIV.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

### A. *Exhaustion of Administrative Remedies*

██ The Court first addresses Defendants' allegations that Plaintiffs have failed to plead that they have exhausted their administrative remedies, as required before bringing a judicial action under Title VII.[1] *Fitzgerald v. Secretary, U.S. Dep't of Veterans Affairs,* 121 F.3d 203, 206 (5th Cir.1997). If a plaintiff fails to exhaust his remedies with the Equal Employment Opportunity Commission ("EEOC"), a district court cannot adjudicate his claims. *Id.* Contrary to

---

1. While it is unclear whether Defendants argue failure to exhaust administrative remedies as a basis for dismissal, in an abundance of caution, the Court will address the allegation.

Defendants' allegation, Plaintiffs have pled that they received a "Right to Sue" letter from the EEOC on April 10, 1997, and a "Notice of Right to File Civil Action" from the Texas Commission on Human Rights on February 18, 1997. Accordingly, insofar as Defendants have moved to dismiss for failure to exhaust administrative remedies, that Motion is **DENIED**.

### B. *Sexual Harassment*

▮▮▮ Defendants next move to dismiss Plaintiffs' sexual harassment claims. Plaintiffs allege that Chiaravalloti violated Title VII by engaging in workplace sexual harassment, *quid pro quo* sexual harassment, and retaliation, in violation of federal and state law.[2] Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

> It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of sexual harassment under Title VII, Plaintiff must show, by a preponderance of the evidence, that:

(1) she is a member of a protected class;

(2) she was subject to unwelcome harassment;

(3) the harassment was based on sex;

(4) the harassment affected a term, condition, or privilege of employment; and

(5) the employer either knew or should have known of the harassment and failed to take prompt action.

See *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995); *Nash v. Electrospace System, Inc.*, 9 F.3d

401, 403 (5th Cir.1993); *Jones v. Flagship Int'l*, 793 F.2d 714, 719 (5th Cir.1986). There are two principal theories of sexual harassment which are cognizable under Title VII: hostile work environment and *quid pro quo* sexual harassment. See *Humphreys v. Medical Towers, Ltd.*, 893 F.Supp. 672 (S.D.Tex. 1995). Plaintiffs in this case bring claims under both theories.

### 1. *Hostile Work Environment*

▮▮▮ In the workplace, sexual misconduct constitutes prohibited "sexual harassment," where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3) (1997). Sexually discriminatory verbal intimidation, ridicule and insults may be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" that violates Title VII. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

▮▮▮ Defendants argue that "Plaintiffs have not claimed a level of pervasiveness or severity necessary to show hostile environment sexual harassment."[3] Plaintiffs allege in the Second Amended Complaint that Chiaravalloti made statements to others such as "I'm going to hire more men, and tie those elementary teachers' pussies in a knot," referred to his "big Italian hairy ass," and told someone "Don't mess with McCarble, she is Rick Summers' pussy." If such allegations are true, the Court is dumbfounded as to how Defendants could possibly suggest that Matthews and McCarble were not subjected to a hostile work environment. Such allegations create a clear picture of manifestly inappropriate conduct in the workplace in this era of civil rights.[4] Title VII was enact-

---

2. Plaintiff alleges retaliation under the TCHRA, Tex.Lab.Code § 21.001 *et seq.* As courts look to parallel federal laws in interpreting those provisions, *see Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 576 (Tex.App.—Austin 1993, writ denied), the state law analysis is subsumed in the Court's Title VII analysis.

3. Defendants do not dispute the sufficiency of the other elements of Plaintiffs' *prima facie* allegations of harassment.

4. Plaintiffs also allege that Chiaravalloti made such comments in front of students. If such allegations are found to be true, this Court has the right to refer the entire case to the U.S. Department of Justice and/or the United States Attorney's office for prosecution under applica-

ed to provide victims of just such misconduct who must work in offensive environments with an action to redress the wrongs. The conduct alleged against Chiaravalloti clearly meets the threshold necessary to survive a Motion to Dismiss under Rule 12(b)(6). Accordingly, Plaintiff has stated a claim under Title VII for hostile work environment sexual harassment, and Defendant's Motion to Dismiss such claims is **DENIED.**

### 2. Quid Pro Quo Sexual Harassment

■■■ Defendants next allege that Plaintiffs have failed to plead sufficient facts to establish a *prima facie* claim of *quid pro quo* sexual harassment. Any employer requiring sexual favors from an employee as a *quid pro quo* for bestowing job benefits violates Title VII. *Ellert v. University of Texas at Dallas*, 52 F.3d 543, 545 (5th Cir.1995). To establish a claim of *quid pro quo* sexual harassment, a plaintiff must establish all of the elements required for workplace sexual harassment, and also that "acceptance or rejection of the harassment [was] either an express or implied condition to receipt of a benefit to or the cause of a tangible adverse effect on the terms or conditions of her employment." *Id.; see* 29 C.F.R. § 1604.11(a)(1) (sexual harassment exists where "submission to [unwelcome sexual advances, etc.] is made either explicitly or implicitly a term or condition of an individual's employment").

■■■ Plaintiffs have pled that Defendants' acts and omissions constituted *"quid pro quo* sexual harassment, as those terms are known under well-established federal case law." Plaintiffs argue that such allegations are sufficient to withstand a Motion to Dismiss under Rule 12(b)(6). The Court disagrees. Dismissal is proper if the complaint lacks an allegation regarding any element of the plaintiff's claims that is necessary to obtain relief. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). Merely alleging, as Plaintiffs have

here, that a defendant's acts constitute sexual harassment "as those terms are known under well-established federal case law" is purely conclusory, and plainly insufficient to state a claim upon which relief can be granted. Absolutely no factual pleadings appear in the Second Amended Complaint to substantiate allegations that Chiaravalloti or anyone else required sexual favors in exchange for job benefits. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims of *quid pro quo* sexual harassment is **GRANTED,** and those claims are **DISMISSED WITH PREJUDICE.**

### C. Section 1983

Defendants challenge the sufficiency of Plaintiffs' claims of First Amendment violations under 42 U.S.C. § 1983 on the basis that no custom, policy, or practice has been alleged for which High Island ISD could be held liable for the unconstitutional acts of Chiaravalloti.

■■■ Defendants argument not only utterly lacks merit, but misstates the law and the facts of the case. First, Defendants neglect the facts by failing to consider the action of the school board which allegedly violated Plaintiffs' rights; namely, that the Board terminated their contracts. Defendants merely argue that Plaintiffs have failed to assert the existence of a "policy or custom." Next, Defendants misinterpret well-established section 1983 law. Municipal liability can arise under section 1983 in two circumstances. In the first, a municipality's final policymakers are held effectively to have made policy or condoned a custom by ratifying the unconstitutional or illegal actions of those subject to their control. In the second, illegal or unconstitutional actions of the final policymakers themselves in setting and achieving the municipality's goals may create liability for the municipality. *Turner v. Upton County, Tex.*, 915 F.2d 133, 136 (5th Cir.1990). Texas law is clear that final policymaking authority in an independent school district rests with the district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7

ble child abuse statutes. Comments such as alleged in this case are vile in any context, but are absolutely abhorrent and intolerable in a civi-

lized society if spoken in the presence of not only professional women, but also elementary school children.

F.3d 1241, 1245 (5th Cir.1993). Therefore, the High Island ISD Board of Trustees may be held liable not merely under the first "custom, policy, or practice" prong, but also directly through their own unconstitutional actions.[5] "No one has ever doubted ... that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body ... because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

Defendants' contention that Plaintiffs' section 1983 claims should be dismissed because the alleged First Amendment violation did not involve a matter of public concern is equally without merit. The Court finds it axiomatic that reporting misconduct of a principal, especially misconduct regarding not only sexual harassment, but sexual misconduct in the presence of children, in a grievance to the school board constitutes a "matter of public concern" worthy of First Amendment protection. *See Davis v. Ector County, Tex.,* 40 F.3d 777, 782 (5th Cir.1994) ("There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light."). Accordingly, Defendants' Motion to Dismiss Plaintiffs' section 1983 claims is **DENIED.**

### D. *Retaliation*

Defendant moves to dismiss Plaintiffs' claims of unlawful retaliation under Title VII and state law.[6] Title VII prohibits an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). To establish a *prima facie case* for retaliation in violation of Title VII, Plaintiff must show that (1) she engaged in protected conduct, (2) a negative

personnel action was taken by the employer against her, and (3) there is a cause and effect connection between the first two elements. *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 267 (5th Cir.1994).

Defendants move to dismiss on the basis that Plaintiffs cannot show a cause and effect connection between their filing of grievances and the termination of their contracts. Grievances complaining of Chiaravalloti's alleged sexual harassment were filed on January 24, 1996, and Plaintiffs were notified just over two months later that their contracts were not being renewed. The close temporal proximity of the events, standing alone, is sufficient as a matter of law to imply a cause and effect relationship between the two. Therefore, Plaintiffs have properly pled retaliation claims under both federal and state law. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims of retaliation is **DENIED.**

### E. *Qualified Immunity*

Finally, Chiaravalloti argues for dismissal of the claims against him on the grounds of qualified immunity. The doctrine of qualified immunity is designed to protect a public official from liability in his or her individual capacity where the official's conduct concerns the performance of discretionary functions and does not violate clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The basis for Chiaravalloti's invocation of qualified immunity, although unclear, appears to be that Plaintiffs have failed to adequately plead a violation of clearly established statutory or constitutional rights.[7] As discussed previously, and reiterated here, the conduct of Chiaravalloti as

---

5. Of course, the two prongs are related. The action of a final policymaker is deemed to be "policy" by which the municipality may have liability. Although Plaintiffs respond to Defendants' arguments against section 1983 liability of the school district only by alleging that the Board is a final policymaker, it is possible that the district could be held liable under either section 1983 analysis.

6. As Defendants point out, Plaintiffs' state law claim of retaliation under Tex.Lab.Code § 21.055 is interpreted consistently with Title VII law.

7. Defendants also argue that Plaintiffs failed to specify whether Chiaravalloti was being sued in an individual or official capacity, and that federal courts in such cases will presume that the official has been sued only in his official capacity. From

alleged by Plaintiffs, if true, clearly runs well afoul of established law in this Circuit. Title VII flatly prohibits such misconduct in the workplace. Furthermore, Plaintiffs have adequately pled that Defendants discriminated against them after they exercised their First Amendment rights. A clear constitutional violation occurs when an employer retaliates, through harassment or other means, against an employee for the exercise of constitutionally protected speech. *See Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Since Plaintiffs' allegations are sufficient to support a violation of clearly established law, Defendants' Motion to Dismiss Chiaravalloti on qualified immunity grounds is **DENIED.**

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claim of *quid pro quo* sexual harassment, and those claims are **DISMISSED WITH PREJUDICE.** Defendants' Motion to Dismiss is **DENIED** with respect to the remainder of Plaintiffs' claims. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

### *PARTIAL FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claims of *quid pro quo* sexual harassment, and those claims are **DISMISSED WITH PREJUDICE.** Defendant's Motion to Dismiss is **DENIED** with respect to all other claims. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

that point, Defendants argue for dismissal of the entire suit against Chiaravalloti because it is in reality a suit against High Island ISD. However, subsequent to the filing of Defendants' Motion to Dismiss, the Court granted leave for Plaintiffs to file a Second Amended Complaint. In the Second Amended Complaint, Plaintiffs have specified that the suit is against Chiaravalloti in his individual and official capacity. Defendant's argument is therefore now moot.